No. 04-770

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 15N

IN RE THE MARRIAGE OF

JULIE J. KEITHLEY,

      Petitioner and Respondent,

   v.

NEAL O. KEITHLEY,

      Respondent and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DR 2003-462,
                Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      George T. Radovich, Attorney at Law, Billings, Montana

      For Respondent:

      Stephen C. Mackey, Towe, Ball, Enright, Mackey & Sommerfeld,
      Billings, Montana

                    Submitted on Briefs:  May 25, 2005

                    Decided:  January, 24. 2006

Filed:

                               Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      On October 1, 2004, the Thirteenth Judicial District Court entered findings of fact, conclusions of law, and a decree of dissolution, dissolving the marriage of Appellant Neal O. Keithley and Respondent Julie J. Keithley. Neal Keithley appeals, challenging the District Court's distribution of assets and its award of maintenance to Respondent. We affirm.

¶3      We consider the following issue on appeal:

¶4      Did the District Court err in its distribution of the marital estate and in awarding maintenance to Respondent Julie J. Keithley?

## BACKGROUND

¶5      Neal Keithley (Appellant) and Julie Keithly (Respondent) were married on May 15, 1982; however, by the spring of 2003, their marriage was irretrievably broken. The parties jointly filed for dissolution of the marriage on April 18, 2003, and there was a trial regarding the distribution of assets on August 18, 2003.

¶6      The District Court entered its findings of fact, conclusions of law, and decree of dissolution on October 1, 2004. That order divided and distributed all of the marital assets, including a $5,060 tax refund the parties realized from their 2002 joint income tax return.

2

Though the court in its findings of fact recognized that the parties split the 2002 tax refund so that approximately $3,000 went to Appellant and $2,000 went to Respondent, it transposed those figures in its final calculations, thereby awarding Appellant approximately $1,000 more than followed from the court's findings of fact. This clerical error was the subject of a Rule 52(b), M.R.Civ.P., motion to amend the final judgment filed by Respondent, which was pending in the District Court at the time this appeal was taken by Appellant. The District Court, however, did not rule on the motion to amend within sixty days, so the motion was effectively denied by operation of Rules 52(b), 59(d), and 59(g), M.R.Civ.P.[1] Respondent did not cross-appeal regarding the clerical error.

¶7     Based on Appellant's income as a miner and Respondent's minimal training and post-dissolution job prospects, the District Court awarded Respondent maintenance of $325 per month. Further, the court deemed the equity in the couple's residential home a marital asset, and divided it equally between Appellant and Respondent. The couple had purchased the home in 2002, and had used $15,000 given to Appellant by his mother as a down-payment. The $15,000 had previously been deposited into the couple's joint checking account. The court divided the home equity equally primarily because it found that Respondent had spent

---

[1]Though filed on October 6, 2004, Appellant's notice of appeal was not properly before this Court until Respondent's Rule 52(b) motion to amend was denied by operation of rule sixty days after it was filed. Rule 5(a)(4), M.R.App.P., reads in pertinent part, "[a] notice of appeal filed before the disposition of any of the above motions [including a Rule 52(b) motion to amend], whether by entry of an order or deemed denial, shall be treated as filed after such order or denial and on the day thereof."

considerable time maintaining and improving the home, specifically by painting and finishing construction of the downstairs bathroom.

## STANDARD OF REVIEW

¶8 "We review a district court's division of marital property to determine whether the findings on which the court relied are clearly erroneous." *In re Marriage of Rolf*, 2000 MT 361, ¶ 39, 303 Mont. 349, ¶ 39, 16 P.3d 345, ¶ 39 (citations omitted). Assuming the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion. *Rolf*, ¶ 39. Finally, "[t]he test for an abuse of discretion in a marital dissolution proceeding is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Rolf*, ¶ 39 (citations omitted).

## DISCUSSION

¶9 ***Did the District Court err in its distribution of the marital estate and in awarding maintenance to Respondent Julie J. Keithley?***

¶10 Appellant challenges the District Court's findings and decree of dissolution on three grounds: first, he challenges the inclusion of the parties' 2002 tax refund in the final distribution of assets worksheet created by the court; second, he challenges the court's equal division of the home equity; and third, he challenges the $325 maintenance payment awarded to Respondent.

¶11 In its final evaluation and distribution of assets, the District Court generally valued assets at the time of dissolution. However, the court made one exception. It included in the distribution the 2002 federal tax refund as split by the parties—$3,060 to Appellant and

4

$2,000 to Respondent—more than a year before the decree of dissolution. Appellant, whose share of the distribution was thereby credited with the larger amount, asserts that the inclusion of the tax refund amounts to reversible error because the refunds were long gone and should have been valued at zero.

¶12 Appellant correctly notes the general rule that "the value of the marital estate should be determined at or near the time of dissolution." *In re Marriage of Swanson* (1986), 220 Mont. 490, 495, 716 P.2d 219, 222. However, as this Court has held many times, "when the application of this rule would create an inequitable disposition, it is proper for the District Court to utilize a differing valuation date." *In re Marriage of Halverson* (1988), 230 Mont. 226, 230, 749 P.2d 518, 521; *see also In re Marriage of Hunter* (1982), 196 Mont. 235, 239, 639 P.2d 489, 491.

¶13 Here, the District Court was well within its discretion to include the 2002 tax refund in the final distribution of assets. Not only was the refund received very near to the time that Respondent filed this case in May of 2003, but it is also apparent from the record that the court viewed Appellant as "less then forthright," a fact which underscores the leeway provided to the court by the law to ensure that its final distribution was equitable. For those reasons, the court's inclusion of the 2002 tax refund in the final asset distribution was proper and does not rise to an abuse of discretion.

¶14 Appellant also challenges the District Court's equal division of the equity in the Keithleys' home. As mentioned previously, the Keithleys purchased the home in 2002, using, in part, funds given to Appellant by his mother and deposited into the Keithleys' joint

5

checking account. Appellant argues that these funds are completely traceable to him, and therefore, should be awarded to him in full.

¶15   Property acquired by gift during marriage is, upon dissolution, distributed by the court according to § 40-4-202, MCA.  That section reads in pertinent part,

> In dividing property acquired . . . by gift, . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202, MCA.  This Court has construed that provision to mean that, "regardless of who holds title, preacquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation." *Rolf*, ¶ 46; *see also In re Marriage of Engen*, 1998 MT 153, ¶ 29, 289 Mont. 299, ¶ 29, 961 P.2d 738, ¶ 9.  Furthermore, "[i]n the event the nonacquiring spouse did contribute to the property's preservation or appreciation, we have held that the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts." *Rolf*, ¶ 46.

¶16   Appellant argues that because $15,000 of the home equity distributed by the court is traceable to his mother's gift to him, he is entitled to the entire $15,000 and a one-half share of the remaining equity.  Appellant's argument, however, ignores the District Court's finding that Respondent contributed to the preservation and appreciation of the home equity by maintaining the home, painting, and working on a downstairs bathroom.  Furthermore,

the court notes that the $15,000 was co-mingled in a joint account, which makes tracing the money directly back to Appellant more difficult. *See In re Marriage of Steinbeisser*, 2002 MT 309, ¶¶ 37-39, 313 Mont. 74, ¶¶ 37-39, 60 P.3d 441, ¶¶ 37-39. For those reasons, we must conclude that the District Court's equal division of the home equity was not an abuse of discretion.

¶17 Finally, Appellant argues that the District Court erred in awarding maintenance in the amount of $325 per month to Respondent. Specifically Appellant argues that the award is both unwarranted and inadequately supported by the District Court's findings of fact and conclusions of law.

¶18 A court may only grant maintenance if the spouse seeking maintenance lacks sufficient property to provide for his reasonable needs and is unable to support himself through appropriate employment. Section 40-4-203(1), MCA. Assuming maintenance is appropriate, the amount and period of the maintenance must be determined by the court in accordance with § 40-4-203(2), MCA. *See In re Marriage of Haines*, 2002 MT 182, ¶ 15, 311 Mont. 70, ¶ 15, 53 P.3d 378, ¶ 15. In awarding maintenance, a court shall consider all relevant facts, including:

> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;
> (e) the age and physical and emotional condition of the spouse seeking maintenance; and

7

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203(2), MCA. While a court must consider each of the factors in § 40-4-203, MCA, "it is not necessary that the court make specific findings of fact regarding each factor, so long as this Court can determine that the trial judge considered each factor." *In re Marriage of Grende*, 2004 MT 36, ¶ 38, 320 Mont. 38, ¶ 38, 85 P.3d 788, ¶ 38; citing *In re Marriage of Childers* (1985), 216 Mont. 125, 127, 700 P.2d 594, 596.

¶19 In awarding maintenance to Respondent, the District Court found that Respondent's monthly expenses exceeded her net monthly income, and that her standard of living had decreased substantially post separation. Further, the court found that given Respondent's age, education, and lack of specialized education, it was doubtful that she would be capable of improving her income for some time. As a result of these facts, as well the court's finding that Appellant was capable of making monthly maintenance payments to Respondent, the court awarded $325 per month in maintenance to Respondent. Based on the record before us, including the District Court's findings of fact and conclusions of law, we conclude that the District Court considered all the facts it was required to consider pursuant to § 40-4-203, MCA. Furthermore, we conclude that there was substantial evidence to support the maintenance award. *See Grende*, ¶ 39.

¶20 Affirmed.

/S/ JIM RICE

We concur:

8

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS